IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KRISTOPHER KEALOHA, #A0265817,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SCOTT HARRINGTON, *et al.*,<br><br>　　　　　Defendants. | CIV. NO. 20-00309 JMS-RT<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |

### ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the court is pro se Plaintiff Kristopher Kealoha's First Amended Complaint ("FAC") brought pursuant to 42 U.S.C. § 1983. ECF No. 11. Kealoha, a pretrial detainee, alleges that Department of Public Safety ("DPS"), Halawa Correctional Facility ("HCF"), and Oahu Community Correctional Center ("OCCC") officials or staff[1] violated his rights under the First and Fourteenth Amendments, and the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-30309, by allegedly: (1) retaliating against him; (2) threatening his

---

[1] Kealoha names in their individual capacities ACO Utu, ACO Arcalas, Shelley Harrington, Everett Kaninau, Scott Harrington, and Randy Galarsa. *See* ECF No. 11 at PageID ## 72-73. Although Kealoha also includes "Does 1-5" as defendants, *id.* at PageID # 73, he does not make any factual allegations against these defendants. "Does 1-5" are TERMINATED as defendants.

safety; (3) using excessive force; (4) failing to process properly his PREA complaint; and (5) failing to investigate a grievance.  ECF No. 1 at PageID ## 78-81.

The court has screened the FAC pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a), and finds that it states claims for relief in part against Defendants Utu, Arcalas, and Kaninau.[2]  Kealoha's other claims are DISMISSED, as specified below.

## I. **STATUTORY SCREENING**

The court is required to screen complaints brought by prisoners seeking relief against a governmental officer or employee of a governmental entity.  28 U.S.C. §§ 1915(e)(2), 1915A(a); *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018) (per curiam).  The court must dismiss any portion of a complaint that: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A(b); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("It is . . . clear that section 1915(e) not only

---

[2] In the Order dismissing Kealoha's original Complaint in part, the Court concluded that Kealoha had stated retaliation and excessive force claims against ACO Tai.  *See* ECF No. 6 at PageID ## 52-55.  Kealoha states in the FAC, however, that ACO Tai is no longer a defendant.  *See* ECF No. 11 at PageID # 79.  Tai and numerous other defendants who were named in the original Complaint but not the FAC have been terminated from this action.

2

permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see* Fed. R. Civ. P. 8(a)(2), (d)(1). To state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it requires factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted).

In determining whether a complaint should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam); *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). Under this standard, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020).

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, the "mere possibility of misconduct" or an "unadorned, the-defendant-unlawfully-harmed me accusation" does not meet this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

        The court liberally construes a pro se litigant's pleadings and affords him the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Although the court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at 1130, if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate, *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

///

///

///

## II. **BACKGROUND**[3]

Kealoha alleges in Count I that an unidentified individual assaulted him at the Circuit Court of the First Circuit, State of Hawaii, on January 28, 2019. ECF No. 11 at PageID # 78. Kealoha claims that ACO Utu and ACO Arcalas had "handcuffed and shackled" him and "ordered and/or allowed" the unidentified person to assault him. *Id.* According to Kealoha, the individual assaulted him because ACO Utu and ACO Arcalas said that Kealoha was a "rat." *Id.* Kealoha filed a PREA complaint, but he claims that Shelley Harrington did not "properly process" it. *Id.* at PageID # 79.

Kealoha alleges in Count II that Everett Kaninau choked him with a towel on April 21, 2019, while Kealoha was handcuffed and shackled. *Id.* at PageID # 80. Kealoha claims that Kaninau assaulted him after saying that Kealoha was a "rat." *Id.* After the incident, Kealoha filed another PREA complaint. *Id.* Galarsa, a PREA coordinator, eventually notified Kealoha that the allegations in his complaint were "unfounded." *Id.* at PageID # 81. Kealoha claims that Galarsa reached this conclusion because Scott Harrington, the warden of HCF, refused to show Galarsa surveillance camera footage of the assault. *Id.* According to Kealoha, he filed a grievance regarding Scott Harrington's alleged "cover-up" of

---

[3] Kealoha's factual allegations are accepted as true. *Nordstrom*, 762 F.3d at 908.

the video footage, but Shelley Harrington, another PREA coordinator and Scott Harrington's wife, "refused to investigate it further." *Id.*

Kealoha further alleges that he filed additional PREA complaints against Kaninau for "incidents" on or about June 19, 2019, June 23, 2019, June 24, 2019, and August 8, 2019. *Id.* Kealoha claims that Scott Harrington also refused to show Galarsa video footage of these alleged incidents and Shelley Harrington "refused to investigate it further." *Id.* Finally, Kealoha claims that Shelley Harrington called him a "rat" in front of other inmates and threatened him on March 28, 2019. *Id.*

Kealoha demands a jury trial and seeks compensatory and punitive damages. *Id.* at PageID # 83.

### III.  DISCUSSION

**A.     Legal Framework for Claims Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020). Additionally, a plaintiff must allege that "the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008). "To

6

meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Id.* "'A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

**B.     Threat-to-Safety Claims**

Kealoha alleges in Count I that ACO Utu and ACO Arcalas threatened his safety by ordering or allowing an unidentified person to assault him while he was handcuffed and shackled at the Circuit Court of First Circuit on January 28, 2019.  ECF No. 11 at PageID # 78.  A pretrial detainee has the right, under the Due Process Clause of the Fourteenth Amendment, to be free from punishment prior to an adjudication of guilt.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  A pretrial detainee may therefore allege a cause of action under the Due Process Clause where conditions of confinement, such as food, clothing, shelter, medical care, and reasonable safety, "amount to punishment."  *Id*.

The elements of a pretrial detainee's failure-to-protect claim against an individual officer are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those

conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.  *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

Kealoha states threat-to-safety claims against ACO Utu and ACO Arcalas based on his allegations that they "ordered and/or allowed" another person to assault Kealoha while his hands were in handcuffs and his legs were in shackles. Kealoha's threat-to-safety claims against ACO Utu and ACO Arcalas in Count I may proceed.

Kealoha claims in Count II that Shelley Harrington called him a "rat" in front of other inmates on March 28, 2019.  ECF No. 11 at PageID # 81. Allegations that prison officials called a prisoner a "snitch" in the presence of other inmates may violate an inmate's right to be free from harm.  *See Pinson v. Unknown Party*, 698 F. App'x 445, 446 (9th Cir. 2017) (mem.).  Here, however, Kealoha does not explain how Shelley Harrington's alleged statements put him at substantial risk of serious harm.  *See Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (mem.) ("[Plaintiff's] speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious

8

harm to his future health."). Indeed, Kealoha does not describe the context in which Shelley Harrington made the alleged statements or how many people heard them. Moreover, Kealoha does not allege that Shelley Harrington knew that her statements might put his safety at risk. Kealoha does not claim that he has experienced any mistreatment because of the alleged statements. Nor does he claim that any other HCF inmate has experienced harm after a prison official called him a rat. Kealoha's threat-to-safety claim against Shelley Harrington is DISMISSED without prejudice.[4]

## C.  Retaliation Claims

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.

---

[4] The dismissal of certain claims without prejudice does not prevent Kealoha from moving to amend his pleading under Federal Rule of Civil Procedure 15 to reallege those claims if he can cure the noted deficiencies in those claims.

2005) (footnote and citations omitted). To state a cognizable retaliation claim, a plaintiff must establish a nexus between the retaliatory act and the protected activity. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1153 (E.D. Wash. 2014) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000)). The adverse action need not be an independent constitutional violation. *Watison*, 668 F.3d at 1114.

### 1. *Alleged Assaults*

Kealoha alleges retaliation claims against ACOs Utu, Arcalas, and Kaninau in Counts I and II, who he alleges called him a "rat" and either personally assaulted or ordered or allowed someone else to assault him on specific dates.[5] *See* ECF No. 11 at PageID ## 78, 80. Although Kealoha does not divulge any reasons why ACOs Utu, Arcalas, and Kaninau called him a rat, liberally construing his FAC, it is fair to assume that they acted in retaliation for Kealoha's past lawsuits, complaints, grievances, or cooperation with federal law enforcement.[6] Plaintiff's retaliation claims against ACOs Utu, Arcalas, and Kaninau may proceed.

///

///

---

[5] Although Kealoha did not mark the box next to "Retaliation" on the FAC, the Court liberally construes his pro se filing. *See Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

[6] In other lawsuits, Kealoha has claimed that prison officials labeled him as an FBI informant. *See, e.g.*, *Kealoha v. Espinda*, 2017 WL 741570, at *3 (D. Haw. Feb. 24, 2017).

### 2. *Alleged Threat*

Kealoha alleges in Count II that Shelley Harrington called him a "rat" and threatened him on March 28, 2019. *Id.* at PageID # 81. Again, although Kealoha does not specify why Shelley Harrington allegedly called him a rat, it appears that she did so because of Kealoha's past protected conduct. Accordingly, Kealoha's retaliation claim against Shelley Harrington may proceed.

### D. Excessive Force Claims

Kealoha alleges that ACO Kaninau assaulted him on April 21, 2019. *Id.* at PageID # 80. To establish an excessive force claim, a pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). The Court does not apply this standard mechanically. *Id.*. "Rather, objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Relevant considerations may include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Kealoha claims that ACO Kaninau choked him with a towel and said he was a "rat." ECF No. 11 at PageID # 80. During the incident, Kealoha claims that his hands were handcuffed behind his back and his legs were shackled. *Id.* Kealoha's excessive force claim against ACO Kaninau may proceed.[7]

**E.     Claims Under the PREA**

Kealoha alleges in Counts I and II that his PREA complaints were not properly processed. ECF No. 11 at PageID ## 79-81. These claims fail at the starting gate, however, because the PREA provides no private cause of action. *See Hatcher v. Harrington*, 2015 WL 474313, at *4 (D. Haw. Feb. 5, 2015) ("Nothing in the PREA explicitly or implicitly suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act."); *Collen v. Yamaoka*, 2015 WL 793085, at *2-4 (D. Haw. Feb. 25, 2015) (same). Kealoha's claims against Galarsa, Shelley Harrington, and Scott Harrington based on the processing of his PREA complaints are DISMISSED with prejudice.

///

///

---

[7] Kealoha asserts that he filed PREA complaints against Kaninau based on other "incidents" on June 19, 2019, June 23, 2019, June 24, 2019, and August 8, 2019. ECF No. 11 at PageID # 81. Kealoha fails to provide, however, any details regarding these alleged incidents. Any excessive force claims based on those incidents are DISMISSED without prejudice.

**F.     Claims Based on Grievances**

Kealoha alleges in Count II that Shelley Harrington did not adequately investigate a grievance. ECF No. 11 at PageID # 81. Inmates have no constitutional right to a grievance procedure, so the failure to properly investigate or process a grievance does not state a claim. *See generally Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." (citation omitted)); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (stating that due process not violated when defendant failed to properly process grievance because unpublished administrative policy statements in establishing a grievance procedure did not create a protected liberty interest); *see also Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (holding the district court properly dismissed § 1983 claims against defendants who "were only involved in the appeals process" because inmates are not entitled to a specific grievance procedure (citing *Ramirez*, 334 F.3d at 860)). Kealoha's claim against Shelley Harrington based on her investigation of his grievance is DISMISSED with prejudice.

///

///

///

///

13

## IV. CONCLUSION

(1) "Does 1-5" are TERMINATED as Defendants.

(2) Kealoha's threat-to-safety claims against Utu and Arcalas in Count I may proceed.  His threat-to-safety claim against Shelley Harrington in Count II is DISMISSED without prejudice.

(3) Kealoha's retaliation claims against Utu, Arcalas, Kaninau, and Shelley Harrington in Counts I and II may proceed.

(4) Kealoha's excessive force claim against Kaninau in Count II may proceed.

(5) Kealoha's claims in Counts I and II against Galarsa, Shelley Harrington, and Scott Harrington based on the processing of his PREA complaint are DISMISSED with prejudice.

(6) Kealoha's claim in Count II against Shelley Harrington based on her investigation of his grievance is DISMISSED with prejudice.

## V. SERVICE ORDER

IT IS HEREBY ORDERED:

(1)  The Clerk shall send the U.S. Marshal a copy of this Order, the First Amended Complaint, ECF No. 11, and one separate completed summons each for Defendants Utu, Arcalas, Kaninau, and Shelley Harrington.  The U.S.

Marshal shall open a file and retain these documents for use in the event that any Defendant declines to waive service of the summons.

(2)  Per agreement with the Department of Public Safety, the Clerk shall provide by electronic means to DPS litigation coordinators Laurie Nadamoto, Esq. and Shelley Harrington, Esq.: (a) a copy of the First Amended Complaint, ECF No. 11, and any exhibits, and a completed Notice of Lawsuit and Request for Waiver of Service of Summons form separately addressed to Defendants Utu, Arcalas, Kaninau, and Shelley Harrington; and (b) two completed Waiver of Service of Summons forms each for Utu, Arcalas, Kaninau, and Shelley Harrington.

(3)  Defendants Utu, Arcalas, Kaninau, and Shelley Harrington shall have 30 days after the request for waiver of service of summons is sent to return the waiver to the U.S. Marshal, who shall file the waiver with the court.  If Defendants Utu, Arcalas, Kaninau, and Shelley Harrington fail to do so within that time, the U.S. Marshal shall NOTIFY THE COURT, who will direct the U.S. Marshal to personally serve the summons and complaint on Defendants Utu, Arcalas, Kaninau, and Shelley Harrington.  A personally served Defendant will be required to pay the costs of service.

(4)  Defendants Utu, Arcalas, Kaninau, and Shelley Harrington shall file a response to the First Amended Complaint within 60 days after electronic

service if formal service is waived, or 45 days if service of the summons is not waived.

(5) Kealoha shall notify the court within one week of any change of address.  This notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to do so may result in dismissal of the action for failure to prosecute under Federal Rule of Civil Procedure 41(b).

(6)  After Defendants Utu, Arcalas, Kaninau, and Shelley Harrington have filed a response to the First Amended Complaint, Kealoha's documents are deemed served on any Defendant or their attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system.  The U.S. Marshal is not responsible for serving documents after service of the operative pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 1, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Kealoha v. Harrington, et al*, Civ. No. 20-00309 JMS-RT, Order Dismissing First Amended Complaint in Part and Directing Service