IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KRISTOPHER KEALOHA, #A0265817,<br><br>                Plaintiff,<br><br>    vs.<br><br>SCOTT HARRINGTON, et al.,<br><br>                Defendants. | CIV. NO. 20-00309 JMS-RT<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR SUMMARY JUDGMENT, ECF NO. 33 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 33.

## I. INTRODUCTION

Pro se Plaintiff Kristopher Kealoha is a State of Hawaii prisoner incarcerated at times at the Halawa Correctional Facility ("HCF") and the Oahu Community Correction Center ("OCCC"). He advances claims under 42 U.S.C. § 1983 against Defendants Matthew Utu, Reynaldo Arcalas, Everett Kaninau, and Shelley Harrington (collectively "Defendants"), all employees at HCF or OCCC. Plaintiff's claims arise out of three distinct incidents: (1) an alleged assault on January 28, 2019; (2) alleged retaliation on March 28, 2019; and (3) an alleged assault on April 18, 2019.

Presently before the court is Defendants' Motion for Summary Judgment, ECF No. 33. Defendants move for summary judgment on the ground

that Plaintiff failed to exhaust available administrative remedies prior to filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The court agrees as to the January 28, 2019 incident but disagrees as to the March 28, 2019 and April 18, 2019 incidents.  Thus, for the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED as to claims arising from the January 28, 2019 incident and DENIED as to claims arising from the March 28, 2019 and April 18, 2019 incidents.

## II. <u>BACKGROUND</u>

### A.    Factual and Procedural Background

On November 18, 2020, Plaintiff filed a First Amended Complaint ("FAC") alleging that various officials and staff at HCF and OCCC violated his rights under the First and Fourteenth Amendments and the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-30309.  ECF No. 11.  The court screened the FAC and allowed the following claims to move forward: (1) threat-to-safety against Adult Correctional Officer ("ACO") Matthew Utu and ACO Reynaldo Arcalas; (2) retaliation against ACO Utu, ACO Arcalas, ACO Everett Kaninau, and PREA Coordinator Shelley Harrington; and (3) excessive force against ACO Kaninau.  ECF No. 12 at PageID # 97.  These claims arise from three alleged incidents.

First, Plaintiff alleges that on January 28, 2019, ACOs Utu and Arcalas threatened his safety and retaliated against him by ordering or allowing an unidentified person to assault him while he was handcuffed and shackled at the Circuit Court of the First Circuit, State of Hawaii ("First Circuit Court").  ECF No. 11 at PageID # 78; ECF No. 38 at PageID ## 202-03.  Second, Plaintiff alleges that on March 28, 2019, Shelley Harrington retaliated against him by calling him a "rat" in front of other inmates.  ECF No. 11 at PageID # 81; ECF No. 38 at PageID # 203.  And, third, Plaintiff alleges that ACO Kaninau used excessive force against him on April 21, 2019 by choking him with a towel, threatening him in a sexually abusive manner, and calling him a "rat" while his hands were cuffed behind his back and his legs were shackled.  ECF No. 11 at PageID # 80; ECF No. 38 at PageID # 203.

On April 13, 2021, Defendants filed a Motion for Summary Judgment, ECF No. 33, arguing that Plaintiff failed to exhaust his administrative remedies under the PLRA by failing to utilize the Hawaii Department of Public Safety's ("DPS") prison grievance system prior to filing suit.  Specifically, Defendants' Motion argues that "Plaintiff has not submitted *any* grievances related to" the January 28, 2019 incident, the March 28, 2019 incident, or the April 21, 2019 incident.  ECF No. 33-1 at PageID ## 172-73 (emphasis in original).  In support, Defendants submitted a declaration from Leona Y. Ogi, an Inmate

Grievance Specialist at HCF, who stated that she "reviewed all of the grievances submitted by Kristopher Kealoha between January 2, 2019 and July 26, 2019" and identified no grievance pertaining to any of the three alleged incidents. ECF No. 34-3 at PageID ## 192-93. Defendants later submitted an "errata" clarifying that Plaintiff submitted no "step 3" grievances during that time period. ECF No. 41 at PageID # 232.

Plaintiff filed an Opposition on May 3, 2021. ECF No. 37. In an accompanying declaration, Plaintiff claims that he had filed grievances concerning each incident and provided specific grievance numbers. ECF No. 38-1 at PageID # 206. As to the January 28, 2019 incident, Plaintiff identified Grievance # 244802 (step 2) and Grievance # 244812 (step 3). *Id.* As to the March 28, 2019 incident, Plaintiff declared that he had filed emergency grievances that were not processed properly by staff. *Id.* He then went on to identify two grievances, Grievance # 414536 and Grievance # 414623, in which he complained about the failure to process his emergency grievances relating to the March 28, 2019 incident. *Id.* Finally, as to the April 21, 2019 incident, Plaintiff identified Grievance # 419672 (step 1) and Grievance # 419699 (step 3). *Id.* He also identifies Grievance # 417975 as "an additional grievance for this incident." *Id.*

Defendants filed their Reply on May 18, 2021, arguing that the grievances identified by Plaintiff "either do not relate to any of the incidents that

are the subject of this lawsuit or clearly demonstrate that Kealoha did not complete

. . . the grievance process."  ECF No. 39 at PageID # 210; *see also* ECF No. 39-1 at

PageID ## 216-17.  Along with their Reply, Defendants produced some, but not

all, of the grievances identified by Plaintiff, as well as a number of grievances

Plaintiff had not identified.

**B.     The Inmate Grievance Program**

Because Defendants' Motion turns entirely on whether Plaintiff

exhausted available administrative remedies, the court briefly sets forth the DPS

administrative process for lodging prisoner complaints: the Inmate Grievance

Program ("IGP").  This process is codified in DPS Policy and Procedure

COR.12.03, Inmate Grievance and Appeals Process (the "Policy"), ECF No. 34-2.

Per the Policy, inmates "are required to utilize the IGP to address any complaints

or concerns" regarding "any aspect" of prison life.  *Id.* at PageID ## 181-82.

The IGP consists of a three-step appeals process.  Inmates must

ordinarily file an initial step 1 grievance within 14 calendar days of the incident

grieved.  *Id.* at PageID # 184.  Once a step 1 grievance has been submitted, the

appropriate prison Section Supervisor has 20 working days to respond.  *Id.* at

PageID # 187.  If the inmate is unhappy with the response, he may appeal to the

Warden/Branch/Core Program Administrator by submitting a step 2 grievance

within 5 days.  *Id.* at PageID # 188.  The Warden/Branch/Core Program

Administrator then has 20 working days in which to respond. *Id.* If the inmate is again unsatisfied with the response, he may appeal by submitting a step 3 grievance to the Division Administrator ("DA") within 5 calendar days. *Id.* The DA then has 20 working days to respond. *Id.* "Appeals to the DA shall be the final and ultimate recourse in the Administrative Remedy Process," meaning that once the DA has responded or the 20 days have elapsed, "the grievance/appeal process will be considered exhausted." *Id.*

At any stage, a grievance may be rejected and returned to the prisoner for failure to meet requirements of the Policy. *Id.* at PageID # 187. When a grievance is rejected, the prison must notify the prisoner of the reason for the rejection. *Id.* If the defect is correctable, "the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the grievance or appeal." *Id.*

The prison is required to "document all levels of the grievance program and . . . monitor inmate grievances and responses." *Id.* at PageID # 182. Further, the prison must "officially acknowledge receipt of a grievance or an appeal by . . . [r]eturning a receipt . . . to the inmate." *Id.* at PageID # 183. And the prison must create "a file for each grievant, which will ultimately include the investigation and all responses." *Id.* The documents in the file are to be maintained for a minimum of three years after the final response has been issued.

*Id.* "Grievances accepted for formal processing shall also be entered into the Corrections Information Management System (CIMS), currently referred to as Offendertrak." *Id.* The IGP provides no guidance as to how detailed or specific a prisoner's grievance must be.

## C.   **The Prison Rape Elimination Act**

Plaintiff claims that he filed grievances regarding the January 28, 2019 incident and the April 21, 2019 incident pursuant to the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-30309. *See* ECF No 39-3 at PageID # 222; ECF No. 39-9 at PageID # 229. The PREA enacts rules and procedures to address sexual abuse and sexual harassment in correctional facilities. 34 U.S.C. § 30302. The Act's implementing regulations define sexual harassment as, among other things, "[r]epeated and unwelcome . . . verbal comments, gestures, or actions of a derogatory or offensive sexual nature." 28 C.F.R. § 115.6. Neither the Act nor its implementing regulations set forth a procedure for filing a PREA complaint, but the implementing regulations and the DPS policy explicitly mandate that there shall be "'no time limits or deadlines'" for reporting incidents of sexual abuse, sexual harassment, or retaliation under the PREA. ECF No. 34-2 at PageID # 189 (citing 28 C.F.R. § 115.52(b)). DPS allows inmates to report incidents of sexual abuse or harassment in a variety of ways, including by making reports confidentially via a hotline number. *See* https://dps.hawaii.gov/wp-

7

content/uploads/2020/10/FINAL-PREA-Brochure-GTL-FINAL-BLACK-4-17-19-

FINAL.pdf (last visited June 7, 2021).

**D.    Plaintiff's Grievances**

   ***1.    January 28, 2019 Grievances***

           Plaintiff identifies two grievances associated with the alleged assault

at the First Circuit Court on January 28, 2019: Grievance # 244802 (step 2) and

Grievance # 244812 (step 3).  ECF No. 38-1 at PageID # 206.  Defendants produce

these grievances, as well as Grievance # 415258, which they construe as Plaintiff's

step 1 grievance regarding this incident.  ECF No. 39 at PageID # 211.  In

Grievance # 415258, which was submitted on February 1, 2019, Plaintiff claimed

that staff had released a video of him and another inmate taken on a surveillance

camera on January 28, 2019, while he was at the First Circuit Court.  ECF No.

39-2 at PageID # 219.  This grievance does not mention any assault, but instead

claims that Plaintiff was put at risk based on his cooperation against other inmates.

*Id.*  The grievance was rejected because he had "failed to provide sufficient

information to support [his] claim."  *Id.* at PageID # 220.  Plaintiff was given a

notice of rejection, to which he responded: "It's all good.  The feds will investigate

the facility—including you.  And I will complain about the 'fact' that I got

assaulted at the courthouse."  *Id.* at PageID # 221.

Next, Defendants produced Grievance # 244802—the grievance that Plaintiff identifies as his step 2 grievance for the January 28, 2019 assault.  ECF No. 39-3.  In that grievance, which was filed on January 9, 2020, Plaintiff wrote that "on or about 12/19/19 . . . I left a message on the 'PREA' hotline about a 'PREA' complaint in which I was assaulted while in restraints at the First Circuit Courthouse Cellblock.  However, no one came to interview me and/or take my statement."  *Id.* at PageID # 222.  The official response to Plaintiff's complaint, returned on January 15, 2020, explained that Plaintiff did not "have a PREA 'open' case concerning this alleged incident," but that he did have a "tort claim against the sheriffs."  *Id.*  The Response also noted that Grievance # 415258 had not mentioned the assault and that Plaintiff had never resubmitted that grievance after it was rejected for lack of sufficient information.  *Id.*

Finally, Defendants produced Grievance # 244812, the grievance that Plaintiff identifies as his step 3 grievance.  ECF No. 39-4.  In that grievance, submitted January 16, 2020, Plaintiff states that he is appealing "2nd Step # 244802."  *Id.* at PageID # 223.  He then states, "On 1/28/19 I was assaulted by another inmate while I was in full restraints."  *Id.*  Plaintiff further explains that "this is a 'separate' incident that doesn't involve . . . the grievance that I filed

# 415258." *Id.* Instead, he explains that "[t]his is a 'PREA' incident" and that he "left a message on the PREA hotline on or about 12/19/19 about [this] incident." *Id.*

Plaintiff received a response from the PREA Coordinator on January 27, 2020, which explained "[t]he following is a response to your 3rd step grievance." *Id.* It stated that "based on your submitted information, tort claim, and hotline call[,] a follow up with OCCC and Sheriff's was conducted." *Id.* The response went on to explain that the claim "does not qualify as PREA by definitions of sexual abuse and or sexual harassment." And it concluded, "[i]n accordance with P&P ["Policy and Procedures"] COR 13.03.10.3, this decision is final and ultimate recourse available within the administrative process of this policy." *Id.*

## 2. *March 28, 2019 Grievances*

In his declaration, Plaintiff explains that he filed several emergency grievances pertaining to the March 28, 2019 incident in which Shelley Harrington allegedly called him a "rat" in front of other inmates. ECF No. 38-1 at PageID # 206. But, he claims that those grievances were never properly processed. *Id.* He points to two grievances—Grievance # 414536 and Grievance # 414623—in which he complained about the prison's failure to process his emergency grievances. *Id.*

Defendants have produced those two grievances, as well as an additional grievance not identified by Plaintiff, Grievance # 414544.

In Grievance # 414536, filed on April 26, 2019, Plaintiff complained that he "didn't receive a gold/inmate receipt for my emergency grievance # 414502" and that "[s]taff on duty is obstructing, hindering and tampering with my right to the grievance process[,] . . . violating policy and procedures and my right to access the courts." ECF No. 39-5 at PageID # 224.  The response, which was returned on May 1, 2019, stated "[p]rovide more sufficient documentation on who is hindering, obstructing, and tampering with your grievance.  Grievance denied." *Id.*

In Grievance # 414544, filed May 1, 2019, Plaintiff appealed the response to Grievance # 414536.  ECF No. 39-6.  He explained that he could not provide more specifics because he did not know who handled his emergency grievance: "Because I'm housed in the 'SHU' the chain of custody for my grievance is [the] ACO on duty to the mailbox" and from "the mailbox to mail personnel" who are "supposed to forward it to IGS." *Id.* at PageID # 225.  He concluded, "[s]o, I can't identify who broke the chain of custody[,] but the fact still remains that I never received my gold/inmate receipt." *Id.*  The prison responded on May 6, 2019, stating that "there is no record of 414502 on Offendertrak[,] therefore you would not receive a receipt for a grievance we did not receive." *Id.*

11

Finally, in Grievance # 414623, which was submitted on June 25, 2019, Plaintiff complained that he did not receive responses for three separate grievances: Grievance # 414602; Grievance # 414545; and Grievance # 414546. ECF No. 39-7 at PageID # 226.  In reply, Plaintiff received a form which notified him that his grievance had been returned because "[a]ppeals to the Division Administrator shall be the final and ultimate recourse in the Administrative Remedy Process." *Id.* at PageID # 227.  This reason is listed under a sub-header stating that "the following rejections for non-compliance to policy may not be appealed." *Id.*  There is a hand-written note on the form that states, "you have exhausted your complaint on this issue." *Id.*

None of the grievances that Plaintiff claims had been lost or mishandled—Grievance # 414502, Grievance # 414602, Grievance # 414545, or Grievance # 414546—have been produced.

### 3.   *April 21, 2019 Grievances*

Plaintiff identifies two grievances associated with the April 21, 2019 incident in which ACO Kaninau allegedly choked him with a towel, threatened him in a sexually abusive manner, and called him a "rat"—Grievance # 419672 (step 1) and Grievance # 419699 (step 3).  Defendants produce both of these grievances.  Plaintiff filed the step 1 grievance, Grievance # 419672, on November 13, 2019.  ECF No. 39-9.  In that grievance, Plaintiff explained that he left a

message on the PREA hotline complaining about ACOs Kaninau and Paaluhi on

October 9, 2019, and that he spoke with a PREA coordinator about his complaint

on October 10, 2019.  *Id.* at PageID # 229.  He further explained that he filed the

operative grievance because "it's been over a month since I've reported this

'PREA' complaint and no update was provided to me of the outcome of the

investigation."  *Id.*  On November 19, 2019, the prison responded, stating that

"[y]our complaint is being investigated, you will be notified of findings upon

completion."  *Id.*

Next, Plaintiff filed Grievance # 419699 on November 22, 2019,

appealing the response to his step 1 grievance, Grievance # 419672.  ECF No.

39-8.  He stated that he was unsatisfied with the way the investigation was being

conducted.  Specifically, he wanted the complaint to be sent "downtown" rather

than investigated internally because he feared that ACO Kaninau or others would

retaliate against him for filing the Grievance.  *Id.* at PageID # 228.  In the

"Resolution Sought" field he wrote "hold recording for 'PREA' hotline that

documents my Complaint."  *Id.*

It is unclear whether Plaintiff construed Grievance # 419699 as a step

2 or step 3 grievance.  There appear to be check marks for both the step 2 and step

3 options on the form, though the step 3 option is also circled.  *Id.*  Further, the

prison's response, issued by the PREA coordinator, stated "the following is in

13

response to your step 3 grievance": "This grievance does not rise to the level of an emergency grievance and will be processes (*sic*) as a standard 2nd grievance." *Id.* The response went on to state that Plaintiff's complaints were under investigation and that he would be notified as to the results of that investigation. *Id.* It concluded by stating: "In accordance with P&P COR.12.03.10.6, this decision is final and ultimate recourse available within the administrative process of this policy." *Id.*

After careful review of these documents and the parties' arguments, the court decides this matter without a hearing pursuant to Local Rule 7.1(c).

### III.  <u>STANDARDS OF REVIEW</u>

**A.    Summary Judgment**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal., at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). And, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587;

*see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor.") (citations omitted).

## B.     Pro Se Prisoner

Plaintiff is proceeding as a pro se prisoner.  His filings and motions must, therefore, be "construe[d] liberally."  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).  Although ordinary pro se litigants must comply strictly with summary judgment requirements, pro se inmates are "expressly exempted from this rule."  *Ponder*, 611 F.3d at 1150 (explaining that "[i]t is the element of 'choice' which most clearly distinguishes *pro se* prisoner cases from ordinary *pro se* cases . . . an inmate's choice of self-representation is less than voluntary; and, when that unwilling self-representation is coupled with the further obstacles placed in a prisoner's path by his incarceration . . . it seems appropriate to apply the requirements of the summary judgment rule with less than strict literalness") (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1365 n.4 (9th Cir. 1986)).

///

///

///

16

# IV. <u>DISCUSSION</u>

## A.  **Exhaustion Requirement for Prisoners**

The PLRA prohibits incarcerated persons from bringing federal claims "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  That said, although inmates must comply with exhaustion requirements, they "are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Rather, "failure to exhaust is an affirmative defense that the defendants must plead and prove," and "the ultimate burden of proof remains with the defendants." *Fuqua v. Ryan*, 890 F.3d 838, 844 (9th Cir. 2018) (citing *Jones*, 549 U.S. at 212).  Where a prisoner has failed to exhaust as to some, but not all, of his claims, the unexhausted claims must be dismissed but the properly exhausted claims may proceed.  *Jones*, 549 U.S. at 221.

Exhaustion requires a prisoner to comply with the prison's "'critical procedural rules.'" *Fuqua*, 890 F.3d at 844 (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)).  As such, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.  And the "particular circumstances of the prisoner's case must be considered when deciding whether

17

administrative remedies were properly exhausted." *Fuqua*, 890 F.3d at 850 (citing

*Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014)).

Under the plain language of the PLRA, "the exhaustion requirement

hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must

exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*,

136 S. Ct. 1850, 1858 (2016) (alteration in original).  A remedy is available only if

it is "'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* at

1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  Applying this rule,

the Supreme Court has identified three situations in which an administrative

remedy may be "officially on the books," but is nevertheless "not capable of use to

obtain relief."  *Id.*  First, an administrative procedure is unavailable when "it

operates as a simple dead end—with officers unable or consistently unwilling to

provide any relief to aggrieved inmates."  *Id.*  Second, "an administrative scheme

might be so opaque that it becomes, practically speaking, incapable of use."  *Id.*

And, third, administrative procedures are unavailable where "prison administrators

thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation."  *Id.* at 1860.

Thus, in order to prevail on their Motion for Summary Judgment,

Defendants must prove, as to each incident that "there was an available

administrative remedy, and that [Plaintiff] did not exhaust that administrative

remedy." *Albino*, 747 F.3d at 1172.  Viewing the evidence in the light most

favorable to Plaintiff, the court concludes that Defendants have met their burden as

to claims arising from the January 28, 2019 incident, but have failed to do so with

respect to claims arising from the March 28, 2019 and April 21, 2019 incidents.

**B.      The January 28, 2019 Incident**

Plaintiff failed to exhaust his administrative remedies with respect to

the January 28, 2019 incident because he did not properly make use of the

available administrative procedures.  Administrative exhaustion requires prisoners

to "us[e] all steps that the agency holds out, and do[] so *properly* (so that the

agency addresses the issues on the merits)."  *Woodford*, 548 U.S. at 90, 91

(emphasis in original) (internal quotation and citation omitted) (explaining that

"compliance with [a prison's] deadlines and other critical procedural rules" is

necessary "because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings"); *see also*

*Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (explaining that PLRA

exhaustion requires a prisoner to "complete the administrative review process in

accordance with the applicable procedural rules, including deadlines, as a

precondition to bringing suit in federal court") (internal quotation and citation

omitted).  In other words, a prisoner cannot bypass the prison grievance system and

proceed to federal court by failing to comply with the prison's procedural rules.

*Woodford*, 584 U.S. at 90.

Here, Plaintiff did not properly utilize the IGP three-step process to lodge his grievance regarding the alleged January 28, 2019 assault.  First, Plaintiff never filed a step 1 grievance regarding this incident, instead initiating his complaint via the PREA hotline.[1]  But, on the record before the court, there is no evidence to suggest that the alleged assault involved sexual harassment or abuse, and was therefore properly grievable through PREA procedures.  Further, it was not until nearly a year after the alleged incident, on January 9, 2020, that Plaintiff filed his first official grievance—which he indicated was a step 2 grievance appealing his PREA hotline complaint.  ECF No. 39-3 at PageID # 222.  This grievance was submitted well outside the IGP's filing deadline, which mandates that prisoners file non-PREA grievances within 14 days of the alleged incident.[2]  ECF No. 34-2 at PageID ## 184, 189 (explaining that the IGP filing period is

---

[1] Defendants claim that a grievance alleging a separate incident on the same date was Plaintiff's step 1 grievance (Grievance # 415258).  *See* ECF No. 39 at PageID ## 211-12.  But this interpretation ignores Plaintiff's own clarification in his step 3 grievance that "this is a 'separate' incident that doesn't involve . . . the grievance that I filed # 415258."  ECF No. 39-4 at PageID # 223.

[2] Even if this grievance could properly be construed as an appeal of Plaintiff's PREA hotline call, the IGP requires that appeals are filed within 5 days after the prison responded to the step 1 grievance (or after 20 days passed without a response).  ECF No. 34-2 at PageID # 188.  Thus, Plaintiff's filing of the step 2 grievance nearly a year after making his PREA hotline complaint was not timely.

"applicable to any portion of the grievance that does not allege an incident of sexual abuse.  The offender must still comply with appeal filing requirements as set forth in [the IGP].").  And where, as here, "a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies."  *Marella*, 568 F.3d at 1028; *see also Harvey v. Jordan*, 605 F.3d 681, 684 (9th Cir. 2010) (holding that because a prisoner "did not file a grievance until well after [the prison's fifteen-day period for filing grievances] had ended, he did not properly exhaust his administrative remedies").

Despite the late filing, the prison nevertheless responded to this grievance, asking Plaintiff to "clarify your allegations and intent via PREA."  ECF No. 39-3 at PageID # 222.  In response, Plaintiff filed a step 3 grievance, ECF No. 39-4.  And upon review of that grievance, the prison determined that Plaintiff's claim "does not qualify as PREA by definitions of sexual abuse or sexual harassment[,] therefore, there is no PREA indicated in your complaint and deemed as such."  *Id.* at PageID # 223.  On that basis, the prison concluded that "in accordance with P&P COR 13.03.10.3, this decision is final and ultimate recourse available within the administrative process of this policy."  *Id.*  That is, the prison

concluded that Plaintiff had improperly pursued his non-PREA claim through the PREA process and rejected it on those grounds.[3]

In short, because Plaintiff failed to comply with the prison's "critical procedural rules," he failed to exhaust his available administrative remedies. Defendants' Motion for Summary Judgment as to the threat-to-safety and retaliation claims against ACOs Utu and Arcalas arising from the January 28, 2019 incident is GRANTED.

## C.   March 28, 2019 Incident

Defendants next argue that Plaintiff failed to exhaust his administrative remedies as to the March 28, 2019 incident in which Shelley Harrington allegedly called him a "rat" in front of other inmates.  They assert that Plaintiff has failed to provide proof that he exhausted this claim because the grievances he put forth "mention[] nothing about Shelley Harrington, her calling him a 'rat,' or that she threatened him."  ECF No. 39 at PageID # 212.

---

[3] It is generally true that when a prisoner has been "reliably informed by an administrator that no remedies are available, . . .  a prisoner is not required to exhaust further levels of review." *Harvey*, 605 F.3d at 683-84 (quoting *Marella*, 568 F.3d at 1027).  Here, however, the prison's determination that Plaintiff had no further remedies does not appear to be a dispensation of his substantive claim, but rather a rejection of that claim on procedural grounds—because Plaintiff had a non-PREA claim, he had failed to timely filed his grievance as required by the IGP. Further, Plaintiff has provided no justification for his failure to timely file.  *See id.* at 684 (explaining that if a prisoner had no opportunity to file a grievance during the allotted time, failure to comply with prison deadlines would not defeat his claim).

It is true that the grievances Plaintiff references—Grievance # 414536 and Grievance # 414544—do not mention Shelley Harrington.  Those grievances instead complain that several other "emergency grievances" filed by Plaintiff— Grievance # 414502, Grievance # 414602, Grievance # 414545, and Grievance # 414546—were lost or improperly handled by the administration.  *See* ECF Nos. 39-5 & 39-6.  And in his Declaration, Plaintiff explains that the lost or mishandled grievances concern the March 28, 2019 incident.  ECF No. 38-1 at PageID # 206. Thus, under Plaintiff's version of events, he was not able to pursue these grievances for the very reason that they were lost or improperly handled. Defendants respond with a declaration from Marc D. Woodward, an Inspection and Investigations Officer Administrator with DPS.  Mr. Woodward states that "[n]o Grievance No. 414502 was found" and that "Mr. Kealoha was told that there was no record of Grievances #414545 and #414546."  ECF No. 39-1 at PageID # 217. He does not, however, mention Grievance # 414602.

"When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies."  *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (explaining that, "[i]n such circumstances, prison officials have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable) (quoting *Ross*, 136 S. Ct. at 1859) (collecting cases); *cf. Nunez v. Duncan*, 591

23

F.3d 1217, 1224 (9th Cir. 2010) (finding prisoner need not satisfy exhaustion requirements where mistake of the prison administration precluded him from pursuing administrative remedies).

On the record before the court, there is a material dispute of fact as to whether Mr. Kealoha's grievances regarding the March 28, 2019 incident were improperly processed. Defendants appear to claim the grievances were never filed, while Plaintiff claims they were lost or otherwise improperly handled. Countervailing declarations are the only support offered for both versions of events. In light of this material dispute, Defendants have failed to meet their burden. Accordingly, their Motion for Summary Judgment as to the retaliation claim against Shelley Harrington arising out of the March 28, 2019 incident is DENIED. *See, e.g.*, *Ledesma v. Adame*, 2017 WL 4123305, at *9 (E.D. Cal. Sept. 15, 2017), *F&R adopted* 2017 WL 5608196 (E.D. Cal. Nov. 21, 2017) (denying motion for summary judgment for failure to exhaust under the PLRA where the plaintiff's and defendant's versions of what happened to missing grievances were "irreconcilable and truly present[ed] a dispute of fact").

## D.    April 21, 2019 Incident

Finally, Defendants argue that Plaintiff failed to exhaust his administrative remedies as to the April 21, 2019 incident because the grievances Plaintiff puts forth are not sufficiently specific—neither providing details as to

ACU Kaninau's conduct nor the precise date on which the incident allegedly occurred. *See* ECF No. 39 at PageID ## 213-14. This argument fails.

The "level of detail necessary in a grievance to comply with the grievance procedures" is determined by a prison's own policy. *Jones*, 549 U.S. at 218. And, where, as here, "a prison's grievance procedures are silent or incomplete as to factual specificity," it is well-settled that "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Put another way, the "grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued,'" or set forth specific "legal theories." *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (quoting *Jones*, 549 U.S. at 219). This is because "'the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.'" *Id.* (quoting *Griffin*, 557 F.3d at 1120).

Applying these standards, Defendants have failed to show Plaintiff's grievances lacked necessary detail. In his step 1 grievance, Grievance # 419672, Plaintiff complained that ACO Kaninau committed acts against him in violation of the PREA, and references two PREA hotline calls he made on October 9 and 10, 2019, during which he provided details as to this incident. ECF No. 39-9 at

25

PageID # 229.  He also requested a copy of the investigation report and a recording of his conversations on the PREA hotline.  *Id.*  The court does not have access to the hotline recording, but Plaintiff declares that the hotline calls and subsequent grievances relate to his allegations that ACO Kaninau choked him with a towel and threatened him in a sexually abusive manner.[4]  ECF No. 38-1 at PageID # 206; ECF No. 11 at PageID # 80.  Further, it appears that Plaintiff provided sufficient information to "alert the prison to the problem," because prison administrators responded to his step 1 grievance by informing Plaintiff that "per Lt. Galarsa via telephone 11/19/19 12:21 pm[,] [y]our complaint is being investigated."  ECF No. 39-9 at PageID # 229.  Likewise, when Plaintiff appealed by filing Grievance # 419699, the prison responded by informing Plaintiff that "[b]ased on responses by HCF and the PREA Coordinator's records[,] your allegations related to ACO[] Kaninau . . . are currently under investigation" before stating that "[i]n accordance

---

[4] This sexually abusive threat qualifies the allegation as a PREA claim, meaning that Plaintiff's grievance was not subject to the standard IGP time limits.  *See* ECF No. 34-2 at PageID # 187.  Although Plaintiff did not set forth the allegedly sexually abusive nature of the interaction in his papers related to the Motion for Summary Judgment, he did so in his Complaint.  *See* ECF No. 11 at PageID # 80.  Because Plaintiff is a pro se prisoner, the court liberally construes his filings and incorporates the allegations from the Complaint into his response to Defendants' Motion for Summary Judgment.  *See Ponder*, 611 F.3d at 1150.

Further, Defendants state that the conduct alleged "appears to have occurred on or about October 9, 2019."  ECF No. 39 at PageID # 213.  But the fact that Plaintiff reported the conduct on October 9, 2019 provides no support for the contention that the alleged conduct occurred on or about that date, rather than on April 21, 2019—particularly given that there are "no time limits or deadlines" for submitting PREA claims.  ECF No. 34-2 at PageID # 189.

26

with P&P Cor.12.03.10.6, this decision is final and ultimate recourse available within the administrative process of this policy."  ECF No. 39-8 at PageID # 228.

If the prison administration felt that the grievances provided inadequate information regarding the incident, they could have rejected them for failure to provide sufficient detail—as indeed they rejected Plaintiff's step 1 grievance pertaining to the January 28, 2019 incident.  ECF No. 39-2 at PageID # 220.  Instead, they investigated Plaintiff's complaints and informed him that he had exhausted his administrative remedies.  A prisoner is deemed to have exhausted when, as here, an administrator "reliably inform[s]" him that "no remedies are available."[5]  *Harvey*, 605 F.3d at 684.  Defendants have failed to prove that Plaintiff did not exhaust his administrative remedies as to the April 21, 2019 incident.  The Motion for Summary Judgment as to the excessive force claim against ACO Kaninau arising from the April 21, 2019 incident is DENIED.

## IV.  <u>CONCLUSION</u>

Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part as follows.

---

[5] For this reason, the fact that Plaintiff only appears to have filed two grievances is no bar to his proceeding in federal court.  *See Marella*, 568 F.3d at 1027 (holding prisoner had exhausted administrative remedies despite completing only two steps of a three-step administrative process because he had been informed that no additional process was available to him); *see also Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Defendants have established that Plaintiff failed to exhaust his administrative remedies as to the claims arising out of the January 28, 2019 incident.  Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to the excessive force and retaliation claims against ACOs Utu and Arcalas, and those Defendants are terminated from the suit.

Defendants have not met their burden of demonstrating that Plaintiff failed to exhaust available administrative remedies as to claims arising out of the March 28, 2019 and April 18, 2019 incidents.  Accordingly, Defendants' Motion for Summary Judgment is DENIED as to the retaliation claim against Shelley Harrington and the excessive force claim against ACO Kaninau.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 07, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Kealoha v. Harrington, et al.*, Civ. No. 20-00309 JMS-RT, Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, ECF No. 33